Eva Mae ROBERTS, on behalf of herself and all others similarly situated, Plaintiff,

v.

CAMERON–BROWN COMPANY, and Federal National Mortgage Association, Defendants.

Civ. A. No. 174–62.

United States District Court, S. D. Georgia, Augusta Division.

Feb. 4, 1975.

William J. Cobb, Georgia Indigents Legal Services, Augusta, Ga., David F. Walbert, John L. Cromartie, Jr., Georgia Indigents Legal Services, Atlanta, Ga., for plaintiff.

Keith W. Benning, Augusta, Ga., for Cameron-Brown Co.

Regnald Maxwell, Jr., Augusta, Ga., Charles E. Watkins, Jr., G. Lee Garrett, Jr., Atlanta, Ga., for Federal Nat. Mortgage Assn.

## ORDER

ALAIMO, District Judge.

This case arises as a result of an alleged violation of the provisions of the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States and of the Department of Housing and Urban Development (HUD) Handbook 4191.1, *Administration of Insured Home Mortgages,* promulgated pursuant to the National Housing Act, 12 U.S.C. § 1715z, *et seq.* Plaintiff alleges, first, that the HUD Handbook imposes mandatory requirements on servicers of mortgages subsidized under the National Housing Act which can be enforced by individual mortgagors; and second, that even assuming plaintiff and other members of her class cannot enforce the provisions of the HUD Handbook, the foreclosure methods used by the defendants violate the due process clauses of the Fifth and Fourteenth Amendments. Defendants, on the other hand, contend that the HUD Handbook in question is not legally enforceable by mortgagors under section 235 and that the due process clauses are not applicable in this case.[1] Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 1343.

Now before the Court for decision is defendant Cameron-Brown's motion to dismiss.

In October, 1972, plaintiff Eva Mae Roberts bought a home in Richmond County, Georgia, financed under a mortgage held by defendant, Federal National Mortgage Association (FNMA), which is a federal corporation organized pursuant to 12 U.S.C. § 1716, *et seq.,* and serviced by defendant Cameron-Brown, a North Carolina corporation doing business in Georgia. The mortgage in question was financed in large part through the subsidy program of section 235 of the National Housing Act, 12 U.S.C. § 1715z. Briefly, the purpose of the section 235 subsidy program is to bring home ownership to low income groups by providing mortgage insurance and by making mortgage assistance payments to the mortgagee on behalf of the mortgagor. The assistance payments are designed to reduce the cost of the mortgage to the equivalent costs of a mortgage bearing interest at an annual rate of one per cent, 12 U.S.C. §§ 1715z(c)(2) and 1715z(i). In order to qualify, both the mortgagee and mortgagor must comply with all the applicable rules and regulations of the Department of Housing and Urban Development, and submit to that agency's supervision. The operations of FNMA and Cameron-Brown, insofar as they affect section 235 homeowners like plaintiff, are extensively controlled by federal statute and regulation. *See e. g.,* 24 C.F.R. §§ 235.1 to 235.499.

In May, 1974, Cameron-Brown attempted to foreclose on plaintiff Eva Roberts' property using Ga.Code Ann. §§ 67–1506, 39–1101, 39–1102, and 39–1201, which allow a nonjudicial foreclosure without personal notice or an opportunity to present defenses. Plaintiff claims that in so doing Cameron-Brown violated both the requirements imposed on servicers of section 235 mortgages under HUD Handbook 4191.1 and the due process clauses of the Fifth and Fourteenth Amendments. Consequently, plaintiff asks this Court, on behalf of herself and all others similarly situated, to enjoin the defendants from further violating the regulations in question and to hold that any nonjudicial foreclosure of mortgages financed and regulated under the section 235 program is unconstitutional.

---

1. Defendant, Federal National Mortgage Association (FNMA), makes various challenges to the class action aspects of the complaint.

These questions will be treated separately in a subsequent order.

Crucial to the success of the plaintiff's first contention is a determination by this Court that section 235 of the National Housing Act, which the Handbook interprets, provides individual mortgagors a private civil remedy.[2] However, such a right is not expressly conferred by the Act itself. Thus, plaintiff's federal claims depend upon the propriety of *implying* a private cause of action from section 235.

Plaintiff cites as dispositive of this issue *Gomez v. Florida State Employment Service et al.*, 417 F.2d 569 (5th Cir. 1969), in which the Court of Appeals for the Fifth Circuit implied a civil remedy under the provisions of the Wagner-Peyser Act of 1933, 29 U.S.C. § 49 *et seq.*, establishing a cooperative State-Federal referral system for the interstate recruiting and transfer of migratory farm workers. In *Gomez*, the Court appeared to focus on three factors which it felt to be significant in determining whether to imply a civil remedy under an Act where none is expressly provided: (1) who the intended beneficiaries of the Act are, (2) what the purpose of the regulatory scheme is, and (3) whether other remedies for violations are available. Since the plaintiffs, who were migratory farm laborers, were the only beneficiaries of the Act (which imposes certain minimum living standards on employers taking advantage of the interstate referral system), and since private lawsuits under the Act afforded both the only means of protection against substandard living conditions and the best method of enforcing the regulations concerning living standards for workers, the Court was willing to permit farm workers to act as private attorneys general in enforcing the Act against their employers.

Applying this analysis to the present case, it appears that although implying a private remedy might be appropriate here, the need for such a remedy is far less compelling than in *Gomez*. First, unlike migratory farm workers under the Wagner-Peyser Act, mortgagors are not the sole intended beneficiaries of the regulations in question. As stated in Chapter 1 of the HUD Handbook, HUD servicing policies are directed toward "protect(ing) HUD's interest in the insured mortgage," and "encourag(ing) private investment in insured home mortgages at the lowest effective cost to mortgagors," as well as "assur(ing) an adequate standard of fair dealing among all participants in an insured mortgage transaction . . . ." HUD Handbook Chapter 1, § 2, p. 1. Furthermore, under the Wagner-Peyser Act involved in *Gomez*, the only remedy contemplated for noncompliance with regulations related to living standards for farm workers is the withdrawal of federal funds from the state agencies charged with processing applications for workers and sending the requests through the interstate facilities of the United States Employment

---

**2.** Two of defendant Cameron-Brown's contentions with regard to the applicability of the Handbook in question can be easily disposed of. First, defendant states that the HUD regulations cannot support plaintiff's claim "for the reason that the statute authorizing the regulations empowers [HUD] only to set forth its standards governing the approval of lenders for the making of government insured loans." Brief of Cameron-Brown in Support of Motion to Dismiss, p. 7. However, as plaintiff points out, the enabling statutes do not support this restricted interpretation. With regard to the FHA 235 program, 12 U.S.C. § 1715b provides that "[t]he Secretary (of HUD) is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter." Furthermore, as to the Federal National Mortgage Association, 12 U.S.C. § 1723a(h) states that "[t]he Secretary of Housing and Urban Development shall have general regulatory power over the Federal National Mortgage Association and shall make such rules and regulations as shall be necessary and proper to insure that the purposes of this subchapter (Subch. III) are accomplished . . . ."

Second, Cameron-Brown contends that even if the regulations are binding, they do not bind Cameron-Brown because it is only a servicing agent, not a mortgagee. However, again as plaintiff points out, "it strains credulity to suggest that regulations which impose mandatory duties regarding the servicing of mortgages do not apply to those who service mortgages." Brief of Plaintiff in Support of Motion for Preliminary Injunction, p. 9.

Service. In the present case, on the other hand, mortgagees who do not comply with HUD regulations and guidelines are threatened with the suspension or termination of their acceptability as HUD-approved mortgagees—a sanction which unlike cutting off federal funds for state agencies is directed against the violator himself. Finally, the Court in *Gomez* emphasized that absent an implied remedy under the Wagner-Peyser Act, farm workers, who often were lured "hundreds of miles across the country to accept work and the advantage of the benefits promised by the laws of the United States only to find that the promise . . . (was) a fraud," would have no effective protection against violations. *Id.* at 576. However, with regard to the management of section 235 mortgages, the HUD Handbook makes it clear that the Central and Field Offices of HUD will monitor servicing operations for the purpose of ensuring that any servicing deficiencies in HUD-insured mortgages will be corrected. Moreover, unlike migratory farm workers, who as the court noted would be unable to correct the conditions by "civil suits under local concepts," mortgagors can resort to private lawsuits if actions by mortgagees violate local or state law, or if violations reach the level of a deprivation of the mortgagor's constitutional rights.

In addition to there being fewer reasons to imply a civil remedy in this case than in *Gomez*, there are also reasons not to do so under section 235 that were not present in *Gomez*. In promulgating the National Housing Act, Congress expressly conferred on the Department of Housing and Urban Development the responsibility of regulating activities of participants in programs set up by the Act. Plaintiff's complaint raises issues relating to matters within the sphere of this regulatory power. Consequently, judicial interference may not only be unnecessary in this case but also disruptive to HUD's administration of the Act. Thus, whether the defendant has violated the regulations with regard to servicing mortgages is best left to the determination of the Department itself.

Furthermore, there are some indications in the regulations under section 235 of the National Housing Act that HUD did not intend to provide mortgagors with a private cause of action under the Act. For example, 24 C.F.R. § 10.4 states that "[t]here shall be published in the FEDERAL REGISTER all rules and regulations of the Department hereafter issued *except those which it determines to be concerned solely with matters internal to the Department or to be of limited interest to the public.*" (Emphasis supplied). Thus, while the Handbook need not have been promulgated in compliance with the Administrative Procedure Act, 5 U.S.C. § 553, because it falls within one of the exceptions to the publication requirement,[3] it is clear that the Secretary contemplated that rules and regulations under the National Housing Act would be published in the FEDERAL REGISTER if they involve matters outside the sphere of HUD's internal administrative concerns. In fact, Section 10.5 of 25 C.F.R. states that the Department ". . . will . . . voluntarily publish in the FEDERAL REGISTER its rules and regulations except those excepted in § 10.4 or in the last sentence of this § 10.5 (where advance publication and notice are 'impracticable, unnecessary, or contrary to the public interest') at least 30 days before their effective date to afford interested persons an opportunity to participate in the formulation of the final language of such rules and regulations through submission of written data, views, or arguments." Since the Secretary has not published

---

**3.** Generally, administrative regulations in order to have the force and effect of law must be promulgated in accordance with the Administrative Procedure Act, 5 U.S.C. § 553 (1966), which requires publication of proposed rules in the Federal Register and an opportunity for comment by interested persons before the rules become effective. However, the Act provides an exception to the prior publication and comment requirements when there is involved "a matter relating to . . . public property loans, grants, benefits, or contracts." 5 U.S.C. § 553(a)(2) (1966).

the handbook involved in this case in the FEDERAL REGISTER, and since he made no determination that advance publication would be "impracticable, unnecessary, or contrary to the public interest," the logical inference is that the Handbook was not intended to apply to the general public. This in turn leads to the conclusion that the Handbook does not create private remedies for individual mortgagors under the National Housing Act because had such remedies been intended, the Handbook would certainly have been considered of public interest.

Moreover, HUD Handbook provisions and published regulations of the Secretary of HUD demonstrate that with regard to the treatment of defaults and specific forms of relief authorized under the Act, mortgagees are given broad discretionary powers. To quote from 24 C.F.R. § 203.340(b)(1), ". . . forbearance relief may be granted by the mortgagee, without prior approval of the Commissioner, . . . [if] [t]he mortgagor shall establish to the satisfaction of the mortgagee, *whose findings shall be conclusive*, that . . . [t]he mortgagor does not own other property subject to a mortgage insured by the Commissioner, and [t]hat the default was due to circumstances beyond the control of the mortgagor . . . ." (Emphasis supplied). Other regulations and Handbook provisions specifically dealing with mortgagor defaults and forbearance relief also suggest that it is up to the determination of individual mortgagees what, if any, type of relief will be granted. For example, the informal and special forbearance procedures outlined in the Handbook provide only that the mortgagee *may* delay the initiation of

foreclosure proceedings if under the circumstances such delay is justified. *See* HUD Handbook, Chapter 8, §§ 121–23, pp. 47–53. These provisions evidence a policy of according mortgagees wide latitude in handling section 235 mortgages and correspondingly diminish the likelihood that HUD intended servicing activities to be regulated via private lawsuits under the Act. It seems more probable that the guidelines contained in the HUD Handbook were designed to aid mortgagees in the exercise of their authority under section 235 rather than to impose legal requirements.[4]

For these reasons, this Court is of the opinion that the Handbook in question does not impose legally enforceable duties on section 235 mortgagees. If a mortgagee violates the provisions of the Handbook, it is up to HUD, who is entrusted with the responsibility of administering the section 235 program, to determine what measures should be taken against the noncomplying mortgagee.[5]

This brings us to plaintiff's second contention, that the method used by the defendant in foreclosing on federally subsidized mortgages under section 235 without affording the mortgagor any notice or an opportunity to be heard violates the due process clauses of the Fifth and Fourteenth Amendments. The threshold issue which this allegation raises is whether there is sufficient state or federal governmental involvement to invoke the strictures of procedural due process. Defendants, relying on a contractual provision in the deed to secure debt permitting the mortgagee to sell the property upon any default in payment by the mortgagor without prior no-

---

**4.** The determination that section 235 of the National Housing Act creates no private civil remedy for mortgagors also disposes of plaintiff's contention that even if the HUD Handbook in question is not legally binding, it should be given controlling weight by the Court in interpreting the Act as it applies in this case. In addition, this conclusion also moots the parties' arguments relating to whether the Handbook is advisory or mandatory in nature.

**5.** According to the HUD Handbook, "[m]ortgagees with poor servicing practices will be identified and the failure of any mortgagee to satisfactorily correct any servicing deficiencies in HUD-insured mortgages in accordance with the provision of this Handbook, may result in suspension or termination of the lender's acceptability as a HUD-approved mortgagee." HUD Handbook 4191.1, *Administration of Insured Home Mortgages*, Chapter 1, § 1, p. 1.

tice to the mortgagor or an opportunity to be heard, argue that this is essentially a private transaction between two contracting parties and no government action is involved. Plaintiffs, on the other hand, contend first, that there is sufficient state action to invoke 42 U.S.C. § 1983; and second, that the federal government is so involved with the mortgage arrangement that the defendants are subject to the Fifth Amendment.

■ With regard to plaintiff's Fourteenth Amendment contention, this Court is of the opinion that state involvement in this case is insufficient to justify a finding of state action. Plaintiff apparently relies on the fact that Ga.Code Ann. § 67–1506 permits non-judicial foreclosure sales, and thus plaintiff contends that this statutory permission alone is sufficient state action to invoke the Fourteenth Amendment. However, although the Supreme Court has never ruled on this precise question, the vast majority of federal courts including the district courts for the Northern and Middle Districts of Georgia, have held that no state action exists when a state statute merely allows the activity complained of to occur. *E. g., Global Industries, Inc. v. Harris*, 376 F.Supp. 1379 (N.D.Ga.1974); *Shelton v. General Electric Credit Corp.*, 359 F.Supp. 1079 (M.D. Ga.1973). *Accord Bond v. Dentzer*, 494 F.2d 302 (2d Cir. 1974); *Adams v. Southern Calif. First Nat'l Bank*, 492 F.2d 324, 13 UCC Rptr. 161, 174 (9th Cir. 1973); *Bichel Optical Laboratories v. Marquette Nat'l Bank*, 487 F.2d 906 (8th Cir. 1973); *Pease v. Havelock Nat'l Bank*, 351 F.Supp. 118 (D.Neb.1972); *Kirksey v. Theilig*, 351 F.Supp. 727 (D.Colo.1972); *Greene v. First Nat'l Exchange Bank*, 348 F.Supp. 672 (W.D.Va.1972); *Oller v. Bank of America*, 342 F.Supp. 21 (N.D. Cal.1972); *Cf. Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477, 43 U.S.L.Week 4110

(1974). Furthermore, in the present case, the state statute in question merely regulates the manner in which foreclosure sales under powers contained in security deeds are conducted and does not even directly authorize such sales. As the Northern District stated in *Global, supra*, "the creditor's power of sale is derived from the parties' contractual undertaking rather than from statute." Therefore, the mere enactment and enforcement of Ga.Code Ann. § 67–1506 does not itself constitute state action.

With this basis for finding state action eliminated plaintiff's Fourteenth Amendment argument fails. Unlike many similar cases involving regulatory schemes under the National Housing Act, no state or local agency is involved in any way in the 235 subsidy program. *E. g., Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973) (receipt of authorization from County Council was a pre-requisite to receiving FHA rent supplements); *Anderson v. Denny*, 365 F.Supp. 1254 (W.D. Va.1973) (City Council passed a resolution granting approval for defendants to participate in Federal Rent Supplement Program); *Colon v. Tompkins Square Neighbors*, 294 F.Supp. 134 (S.D.N.Y. 1968) (defendant received certain tax exemptions, rent supplement subsidies and other financial assistance from city and state authorities). Furthermore, no state approval seems to be required for mortgage companies in Georgia to participate in the program. In fact, the only reference in 12 U.S.C. § 1715z et seq., or the regulations promulgated pursuant to those sections, to state participation in the program is in 24 C.F.R. § 203.1, which provides in part that any state agency empowered to hold mortgages insured under the National Housing Act may be approved as a mortgagee under the program. Since FNMA is the holder of the mortgage in the present case, and Cameron-Brown, a private corporation, is servicing it, this provision is irrelevant here.[6]

---

6. Cameron-Brown also argues that 42 U.S.C. § 1983 deals only with a deprivation of personal liberties rather than a protection of property rights. However, this argument was rejected

by the Supreme Court in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

■ Thus, if plaintiff's due process argument is to prevail, it must rest on a finding by this Court that the federal government participates to such a degree in mortgage arrangements under section 235 of the National Housing Act that the due process clause of the Fifth Amendment applies. Although the defendant Cameron-Brown contends that this amendment applies only to the federal government and not to private persons, it is clear that there can be such an interdependence between the federal government and private companies as to subject the actions of the latter to the procedural due process mandated by the Fifth Amendment. *E. g., Public Utilities Comm'n v. Pollack*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973); *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959 (4th Cir. 1963); *McQueen v. Druker*, 317 F.Supp. 1122 (D.Mass.1970), *aff'd on other grounds*, 438 F.2d 781 (1st Cir. 1971); *Colon v. Tompkins Square Neighbors*, 294 F.Supp. 134 (S.D.N.Y.1968), cited with approval in *Hahn v. Gottlieb*, 430 F.2d 1243 (1st Cir. 1970). For example, in a case involving a federal rent supplement program, *Anderson v. Denny*, 365 F.Supp. 1254 (W.D.Va.1973), it was held that the involvement of the Federal government in the financing, construction, and operation of apartment complexes under the federal program was sufficient federal involvement to subject landlords to the due process clause of the Fifth Amendment. Similarly, the Fourth Circuit ten years earlier rejected the view that "for an otherwise private body to be subject to the antidiscrimination requirements of the Fifth and Fourteenth Amendments it must actually be 'render[ed an] instru-

mentalit[y] of government . . . .'" The court felt that the ". . . initial question is, rather, whether the state or the federal government, have become so involved in the conduct of these otherwise private bodies that their activities are also the activities of these governments and performed under their aegis without the private body necessarily becoming either their instrumentality or agent in a strict sense." *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959, 966 (4th Cir. 1963). Thus, it is clear that constitutional requirements are applicable in some situations to persons and organizations in the private sector.[7]

The remaining question then is whether in this case there is sufficient federal involvement to apply the Fifth Amendment to the activities of the defendants.

Quite understandably, to qualify for the substantial mortgage assistance payments authorized under section 235, both the mortgagor and mortgagee must submit to HUD regulation and supervision in every detail of the mortgage transaction, and are required to furnish HUD information relating to all aspects of the 235 operation. From start to finish, the federal government directly controls the conduct of the program participants. At the first stage of the mortgage transaction, Congress has expressly set out the qualifications necessary for a mortgagor to be approved for section 235 assistance. 12 U.S.C. § 1715z(b). HUD has also adopted certain credit qualifications the mortgagor must meet. HUD Handbook No. 4155.1, *Mortgage Credit Analysis*. Similarly, mortgagees must comply with certain criteria and obtain government approval to participate in the 235 program, 24 C.F.R. §§ 203.1 to 203.9, and

---

7. Some courts in similar circumstances justify subjecting private agencies to constitutional limitations on the basis that the private agency is in effect performing a governmental function by helping to implement some congressional policy and thus is an agency of the government. *E. g., Anderson v. Denny*, 365 F.Supp. 1254 (W.D.Va.1973). These cases cite to *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373, 377 (1965)

(". . . when private individuals or groups are endowed by the State with powers or functions governmental in nature they become agencies or instrumentalities of the State and subject to its constitutional limitations. . . .") and *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (a company town endowed with the characteristics of a municipality is limited constitutionally as a government would be).

HUD can withdraw its approval of a mortgagee if it believes the company is not performing properly. 24 C.F.R. § 203.7. In fact, the mortgagee's operations and duties are almost completely defined by HUD. To quote from the plaintiff's brief:

"HUD regulations specify the amount of the annual mortgage insurance payments, 24 C.F.R. §§ 203.260 to .288, the methods and conditions for terminating the insurance contract, 24 C.F.R. §§ 203.295 to .321; the preconditions and procedures for collecting mortgage insurance payments, 24 C.F.R. §§ 203.355 to .367; the allowable methods of title transfer, 24 C.F.R. §§ 203.385 to .391; and the items that are included and excluded in calculating insurance benefits, 24 C.F.R. §§ 203.401 to .404. These regulations, which establish extensive control in their own right, are further amplified by various HUD publications that are not incorporated in the Code of Federal Regulations." Plaintiff's Brief in Support of Motion for Preliminary Injunction, p. 38.

In addition, another set of regulations governs the subsidy phase of the 235 program. Again quoting from the plaintiff's brief:

"These regulations set out a maximum price for the house, 24 C.F.R. § 235.-320; the amount and payment schedule for assistance payments paid the mortgagee by HUD, 24 C.F.R. §§ 235.-335 and .340; the term of assistance, 24 C.F.R. § 235.345; the mortgagee's obligation to obtain mortgagor re-certifications on an approved HUD form, which shows the homeowner's income, employment, and family composition for determining the amount of 235 assistance, C.F.R. §§ 420.2 and .3; the mortgagee's obligation to seek increased assistance payments when a mortgagor's income drops, 24 C.F.R. § 420.4; the conditions for terminating, suspending, and re-instating the assistance contract, 24 C.F.R. § 420.7; and the obligation of the mortgagee to keep section 235 records, and the au-

thority of HUD or the U.S. Comptroller General to inspect these records, 24 C.F.R. § 420.5. These regulations too are supplemental (sic) by more detailed HUD issuances that are not incorporated in the Code of Federal Regulations." Plaintiff's Brief in Support of Motion for Preliminary Injunction, p. 38.

Finally, as has already been discussed in this order, detailed regulations promulgated by HUD govern all aspects of mortgage servicing and foreclosure, including the requirement that the mortgagor grant a power of sale to the mortgagee. FHA Form No. 2112m.

In light of this extensive involvement by the federal government in the section 235 mortgage operation, this Court is of the opinion that the due process clause of the Fifth Amendment is applicable to such transactions. Thus, the question becomes whether plaintiff's due process rights are violated by a non-judicial foreclosure sale absent any waiver of these rights in the deed to secure debt. More than a hundred years ago, the Supreme Court declared that due process implies both notice and an opportunity to be heard. *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 17 L.Ed. 531 (1863). Furthermore, in a long line of cases culminating in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court indicated that before any deprivation of property, temporary or permanent, a debtor is entitled to notice and an opportunity to be heard. In 1974, however, *Fuentes* was limited by *Mitchell v. W. T. Grant Co.*, 415 U.S. 944, 94 S.Ct. 1464, 39 L.Ed.2d 561 (1974), where the Court held that a hearing must be granted only before one is finally deprived of his property. Nevertheless, it seems clear that some type of notice and judicial determination must be held before a debtor's rights can constitutionally be terminated.

The power of sale involved here provides for notice only by publication. In *Mullane v. Central Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Court recognized that the notice required in any particular situation is that which is "reasonably calculated" to inform interested parties of the action to be taken and of their opportunity to present objections. The Court considered the issue of notice by publication and declared that such notice is sufficient only if the party bringing the action cannot by "due diligence" ascertain either the names or whereabouts of those likely to oppose the action. *Id.* at 317, 70 S.Ct. at 659, 94 L.Ed. at 875. Thus, notice by publication in the present case does not comport with procedural due process. More importantly, this non-judicial method of foreclosure gives the debtor no opportunity to be heard before his equity of redemption is cut off at a public sale. Therefore, due process requirements are not satisfied by the type of foreclosure proceeding which the defendant in the present case wishes to conduct.[8]

 This conclusion raises the final question before this Court—whether plaintiff waived her right to notice and a hearing by signing the security deed containing a power of sale. Plaintiff contends that the power of sale clause is invalid because the government cannot condition section 235 benefits on a prospective waiver of her due process right to personal notice and a hearing before foreclosure. Defendant's position, on the other hand, apparently is that the sec-

tion 235 mortgage transaction is essentially private in nature and consequently, that plaintiff's contention is irrelevant. However, since HUD itself requires participating mortgagees to use a power of sale provision in their mortgage contracts, see FHA Form No. 2112m, and since this Court has already determined that the federal government is substantially involved in these transactions, the only real question is whether the government could require the plaintiff to agree to the power of sale clause.

One of the seminal cases in this area is *Dixon v. Alabama Bd. of Education*, 294 F.2d 150 (5th Cir. 1961), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), in which the Fifth Circuit applied the doctrine of unconstitutional conditions in a school case. Specifically, the Court held that a student could not be suspended without a hearing complying with due process, regardless of a purported waiver in the School Board's regulations:

"... [T]he state cannot condition the granting of even a privilege upon the renunciation of the constitutional right to procedural due process. *See Slochower v. Board of Education*, 350 U.S. 551, 555, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff*, 344 U.S. 183, 191, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *U. P. W. v. Mitchell*, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Only private associations have the

---

8. Invalidation of the power of sale provision contained in security deeds issued under section 235 of the National Housing Act will have the effect of forcing FNMA and its servicers to foreclosure through a judicial proceeding. Ga. Code Ann. § 67–201 establishes the procedures to be followed in such a foreclosure:

"Any person applying and entitled to foreclose such mortgage shall, by himself or his attorney, petition the superior court of the county wherein the mortgaged property may be, which petition shall contain a statement of the case, the amount of the petitioner's demand, and a description of the property mortgaged; whereupon the court shall grant a rule directing that the principal, interest, and costs be paid into court on or before the first day of the next term immediately suc-

ceeding the one at which such rule is granted; which rule shall be published twice a month for two months, or served on the mortgagor or his special agent or attorney, at least 30 days previous to the time at which the money is directed to be paid into the court as aforesaid . . . ."

Under Ga.Code Ann. § 67–301, the mortgagor "may appear at the term of the court at which the money is directed to be paid, and file his objections to the foreclosure of such mortgage, and may set up and avail himself of any defense which he might lawfully set up in an ordinary suit instituted on the debt or demand secured by such mortgage, and which goes to show that the applicant is not entitled to the foreclosure sought, or that the amount claimed is not due . . . ."

right to obtain a waiver of notice and hearing before depriving a member of a valuable right." *Id.* at 156–57. (Remaining citations omitted).

As the plaintiff points out, subsequent Supreme Court decisions have re-affirmed the principle that benefits conferred by the government cannot be conditioned on the relinquishment of constitutional rights. *E. g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Keyishian v. Board of Regents,* 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629, 641–43 (1967); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). In *Goldberg,* for example, the Court invalidated hearing procedures used to terminate welfare payments to recipients without providing the due process, regardless of the fact that the recipients had consented to contrary provisions in the regulations. Similarly, in *Keyishian,* the Supreme Court rejected the notion that public employment, which could be denied altogether, may be subjected to any conditions, regardless of how unreasonable. 385 U.S. at 605–06, 87 S.Ct. at 684–85, 17 L.Ed.2d at 641–43.

In the area of subsidized housing, courts have been unanimous in rejecting constitutional waivers. Although none of these cases has specifically concerned section 235 homeownership, many have involved rental housing operated by federally subsidized private landlords. *E. g., Joy v. Daniels,* 479 F.2d 1236, 1243 (4th Cir. 1973) (due process prohibited evictions without hearings and good cause despite lease providing for unconditional expiration at end of term); *McClellan v. University Heights, Inc.,* 338 F.Supp. 374, 375 (D.R.I.1972) (same); *McQueen v. Druker,* 317 F.Supp. 1122, 1131 (D.Mass.1970), *aff'd on other grounds,* 438 F.2d 781 (1st Cir. 1971) (same). Typical of these decisions is *McQueen v. Druker, supra,* which squarely held that a private landlord acting pursuant to an FHA regulatory

agreement and receiving assistance from the state and national governments had no more discretion regarding eviction procedures than a wholly governmental body. 317 F.Supp. at 1130. That court found as a matter of substantive law that the plaintiffs could not be evicted without receiving a notice specifying good cause for the termination of their tenancy. *Id.* at 1131.

Although not concerned with the precise issue facing this Court, these cases are nevertheless very persuasive. Under the section 235 program, mortgagees, no less than private landlords under other HUD administered programs, are heavily financed and regulated by the government. In fact, here HUD actually requires mortgagors to relinquish their due process rights, thus manifesting a degree of governmental involvement not present in the cases dealing with subsidized rental housing. Moreover, the practical conditions in both situations are the same. As stated in plaintiff's brief:

"When the government extends privileges or benefits to its citizens, the individual has little or no meaningful choice but to accept the benefits on whatever conditions the government chooses to impose . . .. [I]t would make no sense to allow the government to exact prospective due process waivers as a matter of course. The individual has no real choice but to submit to the waiver, and, if waiver were possible, due process protections would be quickly and thoroughly erased." Plaintiff's Brief in Support of Motion for Preliminary Injunction, p. 54.

In light of these considerations, this Court is of the opinion that the government's interest in expediency is outweighed by the importance of affording plaintiff the full protection of the due process clause.

Accordingly, defendant Cameron-Brown's motion to dismiss is denied.