Eva Mae ROBERTS, on behalf of herself
and all others similarly situated,
Plaintiffs-Appellees,

v.

CAMERON–BROWN COMPANY and
Federal National Mortgage Association, Defendants-Appellants.

No. 75–3896.

United States Court of Appeals,
Fifth Circuit.

July 25, 1977.

Rehearing and Rehearing En Banc
Denied Sept. 12, 1977.

Chas. E. Watkins, Jr., G. Lee Garrett, Jr., Atlanta, Ga., Regnald Maxwell, Jr., Augusta, Ga., for Federal, Etc.

Keith W. Benning, Augusta, Ga., for Cameron, Etc.

William J. Cobb, Ga. Legal Services Programs, Douglasville, Ga., David F. Walbert, Atlanta, Ga., for plaintiffs-appellees.

Before THORNBERRY and GEE, Circuit Judges, and MARKEY *, Chief Judge.

THORNBERRY, Circuit Judge:

Plaintiff, Eva Mae Roberts, brought this class action alleging that a mortgagee's exercise of the private power of sale violated the due process clause. Plaintiff also insists that Cameron-Brown Company and the Federal National Mortgage Association (FNMA) failed in their duties to inquire into the circumstances leading to her defaults. Thus, they have allegedly violated HUD Handbook 4191.1. The district court, in response to a number of separate motions, upheld plaintiff's contentions in all respects, holding that the exercise of the private contractual power of sale provision in plaintiff's Deed to Secure Debt violated the due process clause of the fifth amendment. *Roberts v. Cameron-Brown Co.,* 72 F.R.D. 483 (S.D.Ga.1975). The court also stated that although the HUD Handbook itself does not have the force and effect of law, it controls the servicing practice of private mortgagees because it is a valid administrative interpretation of a HUD regulation (24 C.F.R. § 203.9). *Id.* at 496–97. Thus, mortgagors with FNMA may raise the issue of noncompliance with the Handbook in foreclosure actions instituted by all Section 235 mortgagees and servicers.

Defendants appeal from an order of September 9, 1975 preliminarily enjoining them from any nonjudicial foreclosure, as well as from a declaratory judgment order entered that same date regarding the issue of noncompliance with the HUD Handbook. We reverse.

The fact situation confronting this court is routine, and probably all too common. In October, 1972, Eva Mae Roberts bought a home in Augusta, Georgia, with the mortgage financed under Section 235 of the National Housing Act, 12 U.S.C. § 1715z. This program encourages private mortgagees to invest in low income housing, and provides for HUD-financed mortgage assistance payments. Cameron-Brown Co., the private mortgagee, assigned the mortgage to FNMA, and continued to service the mortgage under contract with FNMA.

Beginning in January, 1974, Mrs. Roberts failed to make her monthly payments on the mortgage. The failure continued for several months, until on May 6, 1974, FNMA's attorney notified Mrs. Roberts that FNMA would exercise its option to accelerate the debt. A month later, Mrs. Roberts filed this class action. As noted, the district court has upheld plaintiff's contentions, though in response to one of the earlier motions, he held there was no private cause of action under the HUD Handbook. *Roberts v. Cameron-Brown Co.,* 410 F.Supp. 988 (S.D.Ga.1975). He essentially reversed that holding in a later order, concluding that mortgagors may raise the issue of noncompliance with the Handbook in foreclosure actions instituted by Section 235 mortgagees. *Roberts v. Cameron-Brown Co.,* 72 F.R.D. 483 (S.D.Ga.1975).

The joint appellants, FNMA and Cameron-Brown Co., present two issues to the court. First, whether the exercise of a private power of sale by FNMA is governmental action and subject to the due process clause of the fifth amendment. Second, whether a private cause of action under the HUD Handbook should be implied to allow a mortgagor, as a defense to foreclosure, to assert that the mortgagee has failed to

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

comply with the guidelines of HUD Handbook 4191.1.

## I.

■■■ Appellants contend first of all, and we agree, that there is no sufficient nexus to transform the private mortgagee's act into that of the federal government. The government must be involved with the activity that causes the actual injury, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), and it is not enough to show that the government heavily regulates the private company whose activities are challenged. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Jackson*, the Supreme Court held that a public utility's termination of electric service to petitioner's home without notice and hearing did not deprive her of her due process rights. The Court admitted that electric service is certainly a crucial matter, and that the Pennsylvania Public Utilities Commission closely regulated the electric company. Nevertheless, a "public function" is one that is usually reserved for the state— eminent domain, elections, parks, and the like. It is related to sovereignty, and does not depend entirely on public importance, nor amount of government regulation. Likewise, this Circuit in *Barrera v. Security Bldg. and Investment Corp.*, 519 F.2d 1166 (5 Cir. 1975) specifically held that nonjudicial foreclosure (private power of sale) is not state action.

Appellee insists that the electric service in *Jackson* and the mortgage in *Barrera* were created by the private parties, and that the government, not the mortgagee, creates the FNMA mortgage. The distinction is not apt. Cameron-Brown created the mortgage, not HUD, though HUD certainly exercises some control. HUD provides a convenient mechanism, regulations, and some payments.[1] *Northrip v. FNMA*, 527 F.2d 23 (6 Cir. 1975), confronts appellee as perhaps the closest case to ours on this point. There, the Sixth Circuit held that mortgage foreclosures through power of sale agreements are not powers of a governmental nature. Indeed, the court noted that Congress transferred FNMA to private control in 1968 specifically because its acts were thought to be non-governmental in nature. The court acknowledged the fact that FNMA was acting under the authority of a Michigan statute, yet even this was not a sufficient nexus to make FNMA's actions those of Michigan.

Appellee's response is two-fold. First, she mentions that, as in *Barrera*, the mortgage in *Northrip* was wholly the creation of the mortgagor and the investor. That attempted distinction fails utterly, as *Northrip* involved an FNMA mortgage. Secondly, appellee simply admits that she does not approve of the case, and much prefers *FNMA v. Lefkowitz*, 390 F.Supp. 1364 (S.D.N.Y.1975). In *Lefkowitz*, the court declared FNMA a "federal instrumentality." The problem for appellee is that the question before the New York District Court was different from the instant one. In *Lefkowitz*, the question involved the unconstitutionality of a New York state law as it applied to FNMA. The court held that for the purposes of the supremacy clause, FNMA is a federal instrumentality. In other words, the court merely held that FNMA was analogous to a national bank. A national bank's status as a federal instrumentality may exempt it from certain state laws and regulations, but as against private citizens, its actions are not the actions of the federal government.

Appellee also relies on *McQueen v. Druker*, 317 F.Supp. 1122 (D.Mass.1970), aff'd, 438 F.2d 781 (1 Cir. 1971). There the court held that notice and hearing must be given before evicting tenants from federally regulated and subsidized rental projects, which are owned and operated by private individ-

---

1. *See also Guesnon v. McHenry*, 539 F.2d 1075 (5 Cir. 1976) (local public housing agency which acted and functioned in conjunction with HUD in awarding authority for federally funded housing construction programs was not a federal agency, and act of such local agency in limiting access to specifications and bid forms to licensed contractors did not constitute "agency action" within meaning of Administrative Procedure Act).

uals. The court found that the "governmental function," admittedly not as well-established as some, was the state's specific priority objective of providing for urban renewal displacees and the general goal of providing good quality housing at lower rents. The court acknowledged that governmental regulation and financial subsidy, even together, were not enough. But when a specific governmental function is carried out by heavily subsidized private firms whose freedom of decision-making has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor, the coloration of state action fairly attaches. Thus, the court acknowledges housing as a governmental function. Perhaps the main distinguishing factor is that the landlord in *McQueen* was infringing on a first amendment right: freedom of speech. He was evicting tenants for exercising their first amendment rights with regard to an alleged "rebellion" in the housing project.

In the instant case, FNMA and Cameron-Brown Co. invoke foreclosure by private power, a traditional creditor's remedy under state law. This Circuit recognized the contractual nature of the power of sale provision and the traditional nature of the remedy when we upheld the Texas statute, Article 3810, Tex.Rev.Civ.Stat., setting minimum procedural requirements for private powers of sale. *Barrera v. Security Building and Investment Corp., supra.* The power of sale provision in the instant contract is part of the parties' contractual undertaking and is not grounded on either federal or state statutes. Ga.Code Ann. § 67–1506 does govern the exercise of private powers of sale, but it does not require the inclusion of nonjudicial foreclosure in a deed to secure debt or a mortgage. The statute does not come into operation unless there already exists a power of sale in a deed to secure debt, mortgage, or other lien contract. *See Law v. U. S. Dept. of Agriculture,* 366 F.Supp. 1233 (N.D.Ga.1973).

HUD retains only a limited role in a mortgagee's decision to exercise the private power of sale. The HUD mortgage form does authorize foreclosure by power of sale as well as by judicial foreclosure, but HUD does not prescribe the method of foreclosure and does not in any manner regulate the exercise of the power of sale. Instead, the mortgagee controls the exercise of the power, and FNMA exercised that power in the instant case on its own initiative and independently of HUD.

Although regulated by the federal government in some aspects of its business, FNMA is essentially a privately-owned mortgage banker providing secondary mortgage loans. In 1968, Congress specifically dissociated FNMA from its previous government ownership and transferred it to private ownership. 2 U.S.Cong. & Admin. News 1968 at 2943–44. FNMA maintains the capital structure of a privately-owned corporation. 12 U.S.C. § 1718. HUD's control extends over restricted areas, including approving the minimum amount of FNMA stock to be held by servicing companies, requiring that a reasonable portion of its mortgage purchases be related to the national goal of providing low income housing, and auditing financial records. 12 U.S.C. §§ 1718(c), 1723a(h). The Secretary of the Treasury also has some control over FNMA relating to the issuance of debt securities and borrowing from the Treasury. 12 U.S.C. § 1719(b)–(e). We stand with the Sixth Circuit position that although the regulating statutes impose certain obligations on FNMA, the federal government and FNMA have not become so interdependent as to make its actions the actions of the federal government. *Northrip v. FNMA,* 527 F.2d 23 (6 Cir. 1975).

Appellee responds to the lack of government and mortgagee interdependence with the statement that state action is the improper emphasis, anyway. Foreclosure marks the end of the mortgagor's statutory entitlements, including federal assistance payments, and the mortgagor's interest in mortgage insurance. According to appellee, *Jackson, Barrera et al.* did not involve federal statutory entitlements. Since the instant case allegedly does, the whole line of cases proceeding from *Goldberg v. Kelly,*

397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), are relevant. The problem for appellee is that those cases generally involved agencies that were quite obviously governmental. Further, the statutory entitlements there, like welfare payments in *Goldberg*, were different from the mortgage assistance payments here in that the latter become available to the mortgagor only upon the formation of a mortgage contract with the mortgagee. The contractual relationship between mortgagor and mortgagee is distinct from that between a welfare recipient and a welfare agency.

In *Hoffman v. HUD*, 519 F.2d 1160 (5 Cir. 1975), a case decided after the district court order here, this Circuit rejected, first of all, the argument that foreclosure of property under FNMA by use of the private power of sale violates due process. Second, the court held that plaintiffs waived their right to notice and hearing by their failure to respond to five notices of delinquency. While admitting that she knew of the delinquency, Mrs. Roberts insists that this is a class action involving many potential cases in which mortgagees receive no notice.[2] More importantly, appellee insists that in *Hoffman*, the government was not claiming that the mortgagor had waived his rights in a form contract as a condition to receiving the mortgage, which it is claiming here.

Appellee does not fully grasp the importance of the state action concept to this case. One point on which we agree with the district court is his comment that "if plaintiff's due process argument is to prevail, it must rest on a finding by this Court that the federal government participates to such a degree in mortgage arrangements under section 235 of the National Housing Act that the due process clause of the Fifth Amendment applies." 410 F.Supp. 988 at 995. That is indeed the crucial issue, and

for the aforementioned reasons, we reverse the district court's determination that the requisite nexus or interdependence exists.

II.

■ Appellants insist that both HUD and Congress have rejected a private cause of action under the HUD Handbook and further, that to imply such a cause of action would seriously disrupt the administration of the National Housing Act and HUD's program. Appellants use the four requirements of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) as the outline of their argument. *Cort* holds that in order to imply a private cause of action from a statute, (1) the plaintiff must be one of the class for whose especial benefit the statute was enacted, (2) there must be some indication of legislative intent to create such a remedy, (3) it must be consistent with the underlying purposes of the legislative scheme, and (4) the cause of action must not be one traditionally relegated to state law, and thus inappropriate to infer based on federal law. We agree that application of the *Cort* analysis results in the rejection of a private cause of action.

■ HUD did not promulgate the Handbook for the especial benefit of Section 235 mortgagors, and it is not a federal statute, anyway. HUD designed the Handbook for HUD-approved mortgagees in servicing HUD–insured home mortgages, as the Handbook itself states.[3] In *Baker v. Northland Mortgage Co.*, 344 F.Supp. 1385 (N.D. Ill., 1972), the court held that the National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow.

---

**2.** *See also Dixon v. Ala. Bd. of Educ.*, 294 F.2d 150 (5 Cir. 1975), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961) (student cannot be suspended from state-supported college without a hearing complying with due process).

**3.** "This Handbook 4191.1, . . . is designed to provide lenders the information re-

quired to service HUD insured single-family home mortgages." Handbook 4191.1, at i.

"The purpose of this Handbook is to provide procedural information and policy guidelines for use by HUD approved mortgagees in servicing HUD insured home mortgages." Handbook 4191.1 at ¶ 1, p. 1.

Second, Congress and HUD have rejected the implied private cause of action. No evidence exists demonstrating that Congress intended to create a private cause of action under the National Housing Act. HUD has chosen not to publish the Handbook, thus prohibiting it from having the force and effect of law, as several district courts have noted. *E. g., Brown v. Lynn*, 392 F.Supp. 559 (N.D.Ill., 1975). The First Circuit recently relied on a HUD Mortgage Letter, HM 75–10,[4] to bolster its holding that a lender's failure to take the steps set forth in the Handbook is not a bar to foreclosure. *Hernandez v. Prudential Mortgage Corp.*, 553 F.2d 241 (1 Cir. '77). That Circuit noted that the Supreme Court in *Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), gave conclusive weight to an administrative interpretation advanced in far less formal documents than this letter.[5]

Third, a private cause of action would not further the goals of the National Housing Act. It would delay foreclosure, and the ultimate losses to HUD will be much greater, since interest will continue to run in favor of the mortgagee, and the property may deteriorate. Further, an implied cause of action will discourage private investment, and interfere with the primary jurisdiction of HUD to approve and supervise HUD programs. *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill., 1974), held that plaintiffs could not state a cause of action under due process for a claim based on a mortgagee's alleged breach of HUD regulations, although they did assert a valid claim against HUD for alleged violations of statutory obligations under the National Housing Act.[6]

Finally, mortgage foreclosure has traditionally been a matter for state courts and state law,[7] and there are state law remedies available to protect mortgagors from unconscionable mortgages. Georgia law provides protection from certain unconscionable practices and remedies for mortgagees' excesses.[8]

■ Mrs. Roberts alleges, as a final line of attack, that the Handbook requirements operate as a contract between the government and the mortgagees which make the mortgagors third party beneficiaries. Congress established the Section 235 program to extend home ownership to families with low incomes (thus, the "benefit"), and HUD owes a pre-existing duty to the mortgagees,

4. HUD's Assistant Secretary for Housing Management issued the letter, which stated, "These requirements, and other requirements in Handbook 4191.1, are not intended as legal prerequisites to foreclosure actions since foreclosures are governed by the terms of mortgage instructions and applicable state laws." HM Mortgage Letter 75–10.

5. Appellee insists that HUD promulgations since HM Mortgage Letter 75–10 supersede the letter. The new promulgations, however, include the statement that the subpart "is not intended to affect rights and obligations as between the mortgagee and mortgagor under the mortgage." 41 Fed.Reg. 49366 (1976). Appellee counters that statement by noting that the official comment makes it clear that HUD does not intend to tell judges sitting in foreclosure cases what action of a mortgagee may or may not be a defense to foreclosure. 41 Fed.Reg. 49731 (1976). That comment certainly gives us the leeway to find that the failure to follow the Handbook in all particulars in the instant case is no bar to foreclosure.

6. *See also Holloway v. Bristol-Myers Corp.*, 158 U.S.App.D.C. 207, 485 F.2d 986 (1973) (no private cause of action implied under the Federal Trade Commission Act; regulation is in the hands of the administrative agency, and not the private citizen).

7. This circuit in *Barrera* noted that powers of sale were common before 1776 in the colonies, and have always been regulated by the states. The Supreme Court has even held that a private power of sale "of its own force" was effective under California law to extinguish a federal tax lien. *U. S. v. Brosnan*, 363 U.S. 237, 250, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). *See also Bell Silver & Copper Mining Co. v. First Nat'l Bank*, 156 U.S. 470, 15 S.Ct. 440, 39 L.Ed. 497 (1898) (early Supreme Court approval of state regulated private powers of sale).

8. *See, e. g.*, Ga.Code Ann. §§ 20–116, 37–601, 37–607–11, 37–709, 57–102, 57–112; *Kouros v. Sewell*, 225 Ga. 487, 169 S.E.2d 816 (1969); *Golden v. Fowler*, 26 Ga. 451 (1858) (equity may open the foreclosure even after many years' quiet possession by the mortgagee); *Gilbert v. Cherry*, 136 Ga.App. 417, 221 S.E.2d 472 (Ct.App.1975).

*i. e.,* the mandate to administer the program so as to maximize¹ national housing goals.

This Circuit has found third-party beneficiary contracts in a variety of circumstances. In *Bossier Parish School Bd. v. Lemon,* 370 F.2d 847 (5 Cir. 1967), *cert. denied,* 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967), we held that a school board was bound by the contractual assurances it had given the federal government to allow the children of military personnel to attend its schools. In another case, a divided en banc court held that federal law should apply to resolution of claims that survivors of deceased passengers[9] are the third-party beneficiaries of grant contracts between the county and the Federal Aviation Administration whereby the county agreed to restrict the use of land around the airport. *Miree v. United States,* 538 F.2d 643 (5 Cir. 1976), reversing 526 F.2d 679 (5 Cir. 1976). The court further held that recovery was unavailable under federal. law.[10] The Supreme Court recently vacated the en banc decision, holding that state law applied, but declining to take a stand on whether Georgia law would preclude petitioners from suing as third-party beneficiaries, —— U.S. ——, 97 S.Ct. 2490, 53 L.Ed.2d 557. Although this temporarily unsettles the law somewhat, we find *Bossier* and *Miree* distinguishable because they involved contractual obligations and situations where the promisee clearly intended to give the beneficiary an enforceable right.

Mrs. Roberts is, at most, a third party "incidental" beneficiary, and thus has no cause of action. Restatement of Contracts 2d §§ 133, 147 (tentative draft). The Restatement position is that a beneficiary is "intended," and not merely "incidental," only if the performance of the promise satisfies an obligation of the promisee to pay money to the beneficiary, or if the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. In other words, HUD, or the mortgagee, would have to intend that the mortgagor have an enforceable right.[11] We find no indication that HUD intended the Handbook to be anything other than it states, a compilation of procedural information and policy guidelines for mortgagees.

REVERSED.

---

9. Other plaintiffs included the assignee of the aircraft owner and a burn victim.

10. The dissenters felt that state law applied, but that if federal law did apply, plaintiffs would have a remedy.

11. *See also Guesnon v. McHenry,* 539 F.2d 1075 (5 Cir. 1976), where the court indicated that HUD's intent was crucial in determining if HUD adopted the regulation solely for its own administrative use, or also to confer some right or remedy on contractors interested in bidding on projects. "No case was cited nor has our research uncovered any precedent for the proposition that a private cause of action exists to remedy a violation of this HUD regulation. . . ." HUD should be present so it can have "the opportunity to explain the intent of its regulations." *Id.* at 1077–78. In *Concerned Residents of Buck Hill Falls v. Grant,* 537 F.2d 29 (3 Cir. 1976), the court held that Soil Conservation Service manuals (including a Handbook and a Guide) are merely internal operating procedures, rather than regulations officially promulgated under the Administrative Procedure Act or otherwise. . Thus, they do not prescribe any rule or law binding on the agency.