Katherine JEFFRIES, et al.,
Plaintiffs-Appellees,

v.

GEORGIA RESIDENTIAL FINANCE
AUTHORITY, Harriet J. Macklin,
etc., Defendants-Appellants.

No. 81–7389.

United States Court of Appeals,
Eleventh Circuit.

June 14, 1982.

Michael J. Bowers, Atty. Gen., John B. Ballard, Jr., Ethel D. Anderson, Asst. Attys. Gen., Atlanta, Ga., for defendants-appellants.

Georgia Legal Services Program, Martha Miller, Augusta, Ga., Robert W. Cullen, Atlanta, Ga., for plaintiffs-appellees.

Before INGRAHAM *, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

This appeal involves a review of the constitutionality of eviction procedures administered by the Georgia Residential Finance Authority (GRFA) for tenants receiving

* Honorable Joe Ingraham, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

benefits under the Section 8 Existing Housing Assistance Payments (HAP) Program of the U.S. Department of Housing and Urban Development (HUD). We affirm.

## BACKGROUND

### A. *Proceedings Below*

This case arose from the mid-term termination of leases and the initiation of eviction proceedings by a private landlord, Taptich, against his tenants, who are participants in the Section 8 Existing HAP program administered for HUD by GRFA. In July, 1979, the tenants filed this class action suit against GRFA, the Director of GRFA's Section 8 program, the GRFA Rockdale County Section 8 Program Area Administrator, the Secretary of HUD, and the Director of HUD's Atlanta office, in their official capacities, and against Taptich. In seeking declaratory and injunctive relief, plaintiffs challenged a HUD regulation, 24 C.F.R. § 882.215 (1981), as violative of the fourteenth amendment due process clause. This regulation sets out eviction procedures for tenants receiving benefits under the Section 8 program.

The district court certified a plaintiff class which included Section 8 Existing HAP tenants with minimum one-year term leases and thirty-day notice termination clauses and who were threatened with mid-term lease terminations. The district court granted declaratory relief to the tenants and held: (1) that the lease terminations and evictions comprised sufficient state action to invoke the fourteenth amendment's due process clause, despite the involvement of the private landlord; (2) that the Section 8 tenants had a constitutionally protected property interest in continued occupancy of their rental units throughout their lease term, an interest which the government could not deprive them of without affording them due process of law; and (3) that landlord-initiated mid-term lease terminations could occur only after GRFA found good cause. *Jeffries v. Georgia Residential Finance Authority*, 503 F.Supp. 610 (N.D. Ga.1980).

### B. *The Section 8 Existing HAP Program*

In enacting Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, Congress established the Section 8 Existing Housing Assistance Payments Program, 42 U.S.C. § 1437f (1978), which supplies rent subsidies. The purpose of the Section 8 program is to aid lower income families in obtaining a decent place to live and to promote economically mixed housing. 42 U.S.C. § 1437f(a). The program is implemented by regulations at 24 C.F.R. Part 882.

HUD and a local public housing agency (PHA) such as GRFA administer the Section 8 program. 24 C.F.R. § 882.102. GRFA issues a certificate of family participation to eligible participants who locate a privately owned dwelling that complies with the housing quality standards approved by HUD. 24 C.F.R. §§ 882.102, 882.103(a), 882.109. The certificate holder then executes a lease with the owner of the private dwelling. GRFA then executes a HAP contract with the owner which covers contract rent, family contributions to rent, assistance payments, maintenance, operations, inspections, and evictions, among other privileges.

Under the lease agreement between the landlord and the tenant, the tenant pays a certain percentage of the rent and utilities in proportion to the tenant's income. 42 U.S.C. § 1437f(c)(3); 24 C.F.R. § 889.105. GRFA pays the balance of the rent directly to the landlord. GRFA must approve the lease. The term of each lease must be not less than one month nor more than 180 months. 42 U.S.C. § 1437f(d)(2). All GRFA leases are for twelve, twenty-four, or thirty-six months, but contain a clause that allows termination upon thirty-days written notice by either the landlord or the tenant at will.

The HUD regulation governing evictions of Section 8 existing housing tenants, 24 C.F.R. § 882.215, authorized the landlord to notify the tenant of the proposed eviction. Under this regulation's implementing stat-

ute, however, Congress provided that assistance payments contracts between a PHA and an owner of existing housing must provide that "the agency shall have the *sole* right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy." 42 U.S.C. § 1437f(d)(1)(B) (emphasis added).[1] The district court thus declared the regulation void for conflicting with the statute because it permitted a private landlord to unilaterally terminate subsidies without good cause.

Appellees (tenants) are GRFA certified program participants. Each tenant entered into a lease with the Midtown Apartments in Conyers, Georgia, for a term of twelve months, subject to a provision allowing either the landlord or the tenant to terminate the lease upon giving thirty-days written notice. Appellant Taptich (owner), the owner of Midtown Apartments, exercised his rights under the thirty-day termination clause and gave notice to the tenants and GRFA that he intended to terminate their leases. GRFA provided no administrative hearing or other relief with respect to the proposed terminations.

## II. ISSUES PRESENTED

We must determine (1) whether the participation of the statutorily-created state agency, GRFA, in Section 8 termination and eviction procedures, constitutes sufficient state action to implicate the due process clause of the fourteenth amendment; (2) whether Section 8 tenants have a property interest in the continued occupancy of their apartments during the terms of their leases so that their private landlords cannot evict them mid-term absent good cause despite a lease provision permitting termination at will by either party on thirty-days written notice; and (3) whether certification of a defendant class of Section 8 land-

lords is required because the properly certified tenant class challenges termination and eviction provisions in contracts to which the landlords are parties.

## III. STATE ACTION

■ It is well settled that the fourteenth amendment proscription against deprivations of property without due process of law reaches only government action and does not inhibit the conduct of purely private persons in their ordinary activities. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974). We must therefore determine whether the involvement of GRFA in the Section 8 eviction procedure can be deemed "state action."

The question whether certain conduct is attributable to a private person or is tantamount to state action is frequently difficult to ascertain, especially where "the hand of the government is clear, but its path toward contact with the individual clouded by the action of a private individual." *Jeffries,* 503 F.Supp. at 613; *see Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton,* 365 U.S. at 722, 81 S.Ct. at 860.

While the Supreme Court has refused to fashion a precise formula for ascertaining state action, several principles have emerged from the Court's decisions on this subject. First, the state, "in any of its manifestations," must be significantly involved in the private conduct. *Burton,* 365 U.S. at 722, 81 S.Ct. at 860; *Moose Lodge,* 407 U.S. at 173, 92 S.Ct. at 1971. The mere

---

1. The statutory eviction provision for Section 8 existing housing tenants differs from that for new or substantially rehabilitated housing tenants. In the latter two Section 8 programs, the contract between the Secretary and the owner ... shall provide that all ownership, management, and maintenance responsibilities, including the selection of tenants and the termination of tenancy, shall be assumed by the owner (or approved by the Secretary, with which the owner may contract for the performance of such responsibilities). 42 U.S.C. § 1437f(e)(2).

fact that a private entity is subject to extensive and detailed government regulation is not controlling. *Jackson*, 419 U.S. at 350, 95 S.Ct. at 453. Similarly, granting a license or providing essential services is an instance of insignificant state involvement. *Moose Lodge*, 407 U.S. at 173, 177, 92 S.Ct. at 1971, 1973.

The relevant inquiry is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351, 95 S.Ct. at 453. The private citizen's conduct may be attributable to the state where the government affirmatively facilitates, encourages, or authorizes the objectionable practice. *See, e.g., Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 166, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185 (1978) (warehousemen's sale pursuant to state law providing procedure for conversion of lien to good title is not state action where state has not compelled sale of bailor's goods, but merely has announced circumstances where courts will not interfere with private sale); *Jackson*, 419 U.S. at 357, 95 S.Ct. at 456 (state not sufficiently connected with challenged termination of service by private utility where utility initiated practice which state merely approved but did not order); *Moose Lodge*, 407 U.S. at 173, 92 S.Ct. at 1971 (state action exists where government overtly or covertly encourages practice, such as where existence of state law is tantamount to state having commanded the result); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 359 (5th Cir. 1977) (no federal action in nonjudicial foreclosure of HUD-assisted mortgage where HUD mortgage form authorized foreclosure by private power of sale as well as by judicial foreclosure).

The owners urge that the present case is devoid of any significant state involvement, whether in the form of a "symbiotic relationship" between landlord and state, as in the lease arrangement in *Burton*, or as manifested by governmental compulsion to engage in the challenged act, rather than mere acquiescence in private

conduct as in *Flagg Brothers, Jackson*, and *Roberts*. The owners argue that GRFA does not compel the landlord to exercise his rights under the thirty-day clause; the private landlord acts on his own initiative. By furnishing the lease which permits termination by another party upon giving notice, GRFA merely acquiesces in the landlord's decision to exercise the choice provided. The owners assert that GRFA's issuance of a notice to vacate is a purely ministerial act which does not comprise the overt act causing eviction. The owners also contend that the leasing of rental units by private landlords to Section 8 tenants is not a "public" or "sovereign function" which gives rise to a finding of state action. Finally, the owners assert that the thirty-day termination clause arises solely from a bargain between the landlord and the Section 8 tenant.

We agree with the district court that GRFA "has so far insinuated itself with the private owner in carrying out the challenged eviction procedure" that the nexus between the state and the private action "is both firm and close." The evictions therefore are not purely private and without constitutional ramifications. We recognize that intimate government involvement in the form of significant regulation or provision of benefits will not necessarily mandate a finding of state action absent a close nexus between the state and the eviction of the Section 8 tenants. *Jackson*, 419 U.S. at 350–51, 95 S.Ct. at 453; *Joy v. Daniels*, 479 F.2d 1236, 1238 & n.3 (4th Cir. 1973). We hold, however, that these factors and other evidence of state involvement support the district court's conclusion that such a nexus exists.

As the district court noted, both the Housing Act and its legislative history indicate tenancy termination and eviction under the Section 8 Existing Housing Program implicate state action. The clear import of the statutory language establishes responsibility for lease termination and eviction with the state. The statute explicitly provides that "the agency shall have the sole right to give notice to vacate, with

the owner having the right to make representation to the agency for termination of tenancy." 42 U.S.C. § 1437f(d)(1)(B). The PHA herein, GRFA, is a statutorily-created instrumentality of state government. In enacting the 1974 amendment, Congress stated its intent "that primary responsibility for carrying out the leasing program should be vested in public housing agencies." S.Rep.No. 693, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 4273, 4314. By speaking of the "discretion" invested in the public housing agencies in making certain important decisions under Section 8, and by expressing a "requirement that a public housing agency has the *right* to make the determination in question," Congress made clear that the role it envisioned for the PHAs under the Act is not of the ministerial nature urged by the owners.

In addition to the statute's explicit requirement of state action for effectuating evictions of Section 8 tenants, GRFA plays a pervasive role in the administration and operation of the Section 8 program. GRFA determines the eligibility of prospective tenants, 24 C.F.R. § 882.116(c), informs landlords and tenants of their rights and responsibilities, 24 C.F.R. § 882.116(f), reviews and approves leases between landlords and tenants, 24 C.F.R. § 882.116(j), inspects and certifies housing as meeting HUD standards, 24 C.F.R. § 882.116(o), and authorizes evictions. 24 C.F.R. § 882.-116(p).

Further, GRFA maintains a direct contractual relationship with the Section 8 landlord who benefits thereby both from the rent subsidy payments and the assurance that he will be reimbursed for portions of the rent if the tenant vacates the unit in violation of the lease or for other unpaid amounts owing under the lease. 42 U.S.C. § 1437f(b)(1); 24 C.F.R. §§ 882.105(b), 882.-112(d). This contractual relationship benefits the state as well by providing housing for low income families who could not otherwise afford a decent place to live without assistance. We agree with the district court that "[t]his privity of contract and conferring of mutual benefits results in a concert of action sufficient to be designated state action under *Burton*."

This case also is distinguishable from *Flagg*, which was marked by the total absence of overt official involvement, and from *Jackson*, where the state's only involvement was to approve a termination plan. In this case, the state may veto the private landlord's request to terminate occupancy, but otherwise must take the affirmative step which is the prerequisite to legal eviction. The owners' reliance on *Roberts* also is misplaced. In that case, the private mortgagee controlled the exercise of its power of foreclosure and exercised that power on its own initiative and independently of the government. The government did not prescribe the method of foreclosure and did not regulate that process in any manner. On the other hand, the instant case involves governmental defendants who authorize the eviction and issue the notice to vacate, and implicates actual and mandatory state action. Not only does the state regulate the exercise of rights under the thirty-day clause, but a private party may not complete eviction without state approval.

Finally, the circumstances of the present case meet the "public functions" test. *See Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) (passageways in privately-owned shopping center not public places, nor is operation of privately-owned shopping center an exclusive governmental function); *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (administration of private discriminatory trust by public officials involves state action); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (streets in company-owned town held public, even though privately-owned). GRFA's purpose is to build, rehabilitate, finance, and lease housing by administering the Section 8 program. In authorizing evictions, the authority thus acts pursuant to its public function. Moreover, the former Fifth Circuit has acknowledged that housing is a governmental function. *Roberts*, 556 F.2d at 359. "[W]hen a specific governmental function is carried

out by heavily subsidized private firms whose freedom of decision-making has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor, the coloration of state action fairly attaches." 556 F.2d at 359 (citing *McQueen v. Druker*, 317 F.Supp. 1122 (D.Mass.1970), *aff'd*, 438 F.2d 781 (1st Cir. 1971)).

## IV. THE SUBSTANTIVE PROPERTY INTEREST

■ The district court held that Section 8 existing housing tenants have a constitutionally protected property interest in the continued occupancy of their rental units until the end of their lease term. The court held that despite the thirty-day termination clause, private landlords may only terminate tenants' leases mid-term upon a determination by GRFA that "good cause" exists. We affirm and thereby join those courts which have found that Section 8 tenants have constitutionally protected property rights in an expectation of continued occupancy and receipt of rent and utility subsidies. *See Swann v. Gastonia Housing Authority*, 502 F.Supp. 362, 365 (W.D.N. C.1980), *aff'd in part*, 675 F.2d 1342 (4th Cir. 1982); *Brezina v. Dowdall*, 472 F.Supp. 82, 85 (W.D.Ill.1979).

The owners contend that the finding of such an entitlement contravenes the Section 8 statute, HUD regulations, the lease, and state law. They note that the Section 8 statute authorizes a lease term as short as one month and that implementing HUD regulations, which are entitled to deference, provide for one to three year leases. In addition, the owners point out that the regulations permit mid-term termination by either party upon thirty-days written notice. The tenants' leases also provide for termination by either party upon thirty-days notice, and Georgia courts have interpreted similar provisions to permit termination by either party at will, without cause.

The tenants may claim procedural due process rights under the due process clause if they have a substantive property interest

in continued occupancy. *Joy*, 479 F.2d at 1239; *Swann*, 502 F.Supp. at 365; *see Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it . . . ." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. A property interest in a benefit may be established through existing rules or mutually explicit understandings that support the claim of entitlement to the benefit, or through the construction of statutes and regulations which define and delimit the interest asserted. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). We thus review the applicable statutes and regulations in evaluating the due process rights of appellees.

■ It is well settled that a protected property interest arises where a government benefit may be withdrawn only for cause. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978); *Arnett v. Kennedy*, 416 U.S. 134, 151, 94 S.Ct. 1633, 1642, 40 L.Ed.2d 15 (1974); *Glenn v. Newman*, 614 F.2d 467, 471 (5th Cir. 1980). The district court found that the statute creating the Section 8 program was the primary source of the legitimate expectation that a Section 8 tenant would not be evicted absent good cause. 42 U.S.C. § 1437f. While subsection (d)(1)(A) vests the responsibility of tenant selection with the owner, subsection (d)(1)(B) states "the agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy." The trial court found that these subsections together implicitly grant the PHA absolute authority in terminating tenancies and authorizing evictions. The court noted that vesting the agency with the sole authority to issue the notice to vacate

would be meaningless unless the agency actually reviewed the cause advanced by the owner in seeking eviction. Indeed, it is reasonable to implicitly require just cause where the agency itself issues the notice.

Similarly, if Congress had intended to permit termination at will by the owner, it would be useless to require the owner to make representations to the agency and to impose the administrative burden of issuing notices to vacate on the PHA. The owner's duty to make representation also demonstrates the need to assess the propriety of instituting eviction.

The district court also relied on the statutory framework to support its interpretation. In addition to the existing housing program, the Act provides financial assistance for newly constructed and substantially rehabilitated dwellings. With respect to the latter programs, the Act grants the private owner explicit authority to terminate tenancies. 42 U.S.C. § 1437f(e)(2).

The private owner's rights in the existing housing program, however, are restricted to the right to *seek* lease termination and, in so doing, to make representation to the PHA. The PHA has the sole authority to give notice to vacate. Although the legislative history does not indicate why Congress differentiated between the three programs, we hold that the district court did not err in finding that Congress intended a different result in the existing housing program by providing a distinct termination mechanism. The court correctly implied a good cause requirement as a prerequisite to GRFA's issuance of a notice to vacate.

This conclusion is buttressed by the fact that GRFA's involvement in the private landlord-tenant relationship is confined to instances of premature lease termination, rather than participation in initial lease formation and natural expiration of the lease. The court also correctly recognized that arbitrary evictions would defeat the Act's goal by precluding the poor from taking full advantage of federal rent subsidies

for obtaining a decent place to live and by interfering with the policy of promoting economically mixed housing. In the face of arbitrary eviction, the mere provision of federal rent subsidies without attendant due process protections would hardly promote the implicit purposes of assuring "an atmosphere of stability, security, neighborliness, and social justice." *Joy*, 479 F.2d at 1240.

The owners also argue that since the statute permits the PHA and the landlord to enter into contracts for a term as short as one month, that a lease between a tenant and the landlord creates a legitimate expectation of tenancy limited to one month, regardless of the length of the lease. 42 U.S.C. § 1437f(d)(2). We fail to see how the provision for a minimum one month lease term equates the legitimate expectations held under a one month lease with those held under a one year lease. All the leases in this case were for more than a month.

The owners also argue that the HUD regulation implementing the Section 8 program lessens any alleged legitimate expectation of continued occupancy. *See* 24 C.F.R. § 882.215. They urge this court to accord deference to the regulation which permits the owner to send the notice to vacate and which imposes no good cause requirement for mid-term lease termination. The statute, however, mandates that only the PHA has the authority to issue a notice to vacate. 42 U.S.C. § 1437f(d)(1)(B). The district court thus declared this regulation null and void for conflicting with the statute.[2] Because the eviction regulation is void, we hold that it has no bearing on the tenants' legitimate expectation of mid-term termination only for cause.

The owners also rely on new HUD regulations providing that subsidized tenants have an entitlement of occupancy. The regulation, 24 C.F.R. § 450.3 (1981), states that the landlord may not terminate any

---

**2.** Appellants do not contest on this appeal the trial court's ruling that the HUD regulation is void for conflict with its implementing statute.

tenancy in a subsidized program except upon grounds providing good cause. As proposed, the regulation encompassed the three Section 8 programs. 41 Fed.Reg. 16924, 16924–26 (1976). The final regulation, however, excluded the Section 8 new construction and substantial rehabilitation programs from its coverage because inclusion would "greatly reduce private interest in the program" and because "the Section 8 Program can serve the nation best by vesting private owners the fullest measure of management responsibilities." 41 Fed.Reg. 43330 (1976). We find this language unpersuasive, because it refers only to the new and substantially rehabilitated housing programs which delegated all management, ownership and maintenance responsibilities to the private landlord.

HUD went on to summarily exclude the Section 8 existing housing program from the ambit of the new regulation "to be consistent with the basic philosophy of the program." 41 Fed.Reg. 43330. In so doing, HUD reasoned that this program is premised on the so called "finders-keepers" concept which permits tenants, once found eligible, to seek housing in the broadest possible area. 41 Fed.Reg. 43330; *see* 24 C.F.R. § 882.103. HUD thus excluded existing housing tenants from the protections afforded by 24 C.F.R. § 450.3 because an evicted tenant is free to move to another dwelling unit and continue to receive benefits. 41 Fed.Reg. 43330. The regulation, however, ignores the separate treatment which Congress explicitly accorded to the existing housing program with respect to the role of the PHA in evictions.

Moreover, Congress recently amended 42 U.S.C. § 1437f(d)(1)(B) by requiring "good cause" for mid-term evictions. Omnibus Budget Reconciliation Act of 1981, Pub. L.No. 97–35, § 326(e)(1), 95 Stat. 357, 407.[3] The amended tenancy termination provision deleted the requirement that the PHA shall have the sole right to give notice to vacate with respect to the Section 8 existing housing program. In referring to the "good cause requirement," the legislative history speaks of "the procedural and substantive *rights* of the tenant with respect to occupancy of the unit." H.R.Conf.Rep.No.97–208, 97th Cong., 1st Sess. 694–95, *reprinted in* [1981] U.S.Code Cong. & Ad.News 1010, 1053 (emphasis added). The conferees stated that they did not intend these statutory provisions to govern the landlord-tenant relationship after a landlord has, *in good faith*, terminated his participation in the existing housing program. Although the amendment applies only to leases entered into after October 1, 1981, these statements clarify congressional intent regarding the propriety of implying a good cause requirement in the provision governing the instant case.

For the above reasons, we hold that the district court was correct in concluding that Section 8 existing housing tenants have a protected property interest in their government subsidized leases because their leases may be terminated mid-term only for cause.

## V. FAILURE TO JOIN LANDLORD OWNER CLASS

The owners contend that all Section 8 landlords are indispensable parties under Fed.R.Civ.P. 19[4] because this class action

---

**3.** The Omnibus Reconciliation Act of 1981, Pub. L.No.97–35, § 326, 95 Stat. 357, 407 (amending 42 U.S.C. § 1437f(d)(1)(B) (1978)) provides:

(e)(1) Section 8(d)(1)(B) of the United States Housing Act of 1937 is amended to read as follows:

"(B)(i) the lease between the tenant and the owner shall be for at least one year or the term of such contract, whichever is shorter, and shall contain other terms and conditions specified by the secretary; and

"(ii) the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for

violation of applicable Federal, State, or local law, or for other good cause;".

(2) The amendment made by paragraph (1) shall apply with respect to leases entered into on or after October 1, 1981.

**4.** Fed.R.Civ.P. 19(a) requires joinder of a party if:

(A) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be

challenges termination and eviction provisions in contracts to which they are parties. The owners further contend that the judgment rendered in the absence of the private landlords as a practical matter impairs their ability to protect their property interests and their leases by exercising the termination option. Finally, the owners assert that the named defendant owner has not adequately protected their interests. Since it is no longer feasible to join this defendant class, the owners urge this court to decertify the plaintiff class and vacate the judgment of the district court. Since the named tenant's leases have expired and have not been renewed, rule 19 would require the dismissal of the class action because it is no longer feasible to join the owners. The owners thus argue that the case is moot.

On the other hand, the tenants argue that the landlords are not indispensable parties because they possess no bargaining power with respect to the operation of the Section 8 program or the modification of HUD contracts and leases, and are not actual participants in contract formation. The tenants also rely on the fact that rule 19(d) explicitly excepts class actions from the indispensable party rule. Finally, they argue that failure to join the absent landlords is not error because their interests are identical to and adequately protected by defendants already before this court.

Pursuant to their motion to dismiss and cross-motion for summary judgment, the state defendants argued that, if the court found for the tenants, their request for class-based relief was inappropriate for failure to join an indispensable class of Section 8 owners. State defendants requested that any relief accorded the tenants should be declaratory relief entered for tenants individually. In essence, the state defendants requested the district court to decertify this case as a class action. They neglected, however, to raise an objection on this ground when the court granted class certification.

It is a basic principle that a court's judgment will bind only those who are parties to the suit. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). The interests of absent parties must be considered in a rule 19 motion governing the joinder of persons needed for just adjudication. *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980). Failure to raise this issue by proper motion before the trial court does not constitute waiver. 620 F.2d at 51; *Kimball v. Florida Bar*, 537 F.2d 1305, 1307 (5th Cir. 1976). Nevertheless, joinder of an absent class of defendant landlords would serve no purpose under the circumstances of the present case. "When the judgment appealed from does not in a practical sense prejudicially affect the interests of the absent parties, and those who are parties have failed to object to non-joinder in the trial court, the reviewing court will not dismiss an otherwise valid judgment." *Sierra Club v. Hathaway*, 579 F.2d 1162, 1166 (9th Cir. 1978), *quoted in McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980).

The court's decision on joinder is guided by pragmatic concerns, especially the effect on parties and on litigation. *Smith v. State Farm Fire & Casualty Co.*, 633 F.2d 401, 405 (5th Cir. 1980). Because the state defendants and the owners advanced the same position as the absent landlords would have taken, and because their interests were coextensive, we disagree with the assertion that a disposition in the absence of the private owners may, as a practical matter, impair their ability to protect their interests. *United Transportation Union v. Long Island Rail Road*, 634 F.2d 19, 22 (2d Cir. 1980), *appeal pending*, 452 U.S. 960, 101 S.Ct. 3107, 69 L.Ed.2d 970 (1981).

This case does not challenge the propriety of owner Taptich's actions, nor of the con-

---

accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability

to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

[redacted]

duct of any other private owner. *Cf. Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478–80 (6th Cir. 1972) (HUD a necessary party when legality of *its* actions is at issue). Rather, this case embraces a challenge to regulations promulgated by HUD and the rights and responsibilities of the tenants and the PHA under the Section 8 program with reference to eviction procedures. *See Texas & Pacific Railway v. City of New Orleans*, 159 F.2d 77, 78 (5th Cir. 1947). Specifically, the controversy in the instant case relates to the due process right of the tenants to demand an eviction procedure which terminates their entitlement for good cause and which the PHA must follow. Since GRFA must assess good cause in every case, we see no reason why the tenants were not entitled to a declaratory judgment to adjudicate the rights and duties under the eviction provision of the statute. Because issuance of the notice to vacate is a decision solely within the discretion and responsibility of GRFA, the district court correctly found that it could afford complete relief to all of the parties without joinder of a defendant class of owners.

[redacted] Moreover, the tenants' claim to an entitlement requiring due process safeguards does not necessarily conflict with the claims of absent owners so as to adversely affect their interests. *Cf. McCulloch*, 620 F.2d at 51. Alternatively, when litigation seeks vindication of a public right, third persons who could be adversely affected by a decision favorable to the plaintiff do not thereby become indispensable parties. *National Licorice Co. v. NLRB*, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940); *see Natural Resources Defense Council, Inc. v. Berklund*, 458 F.Supp. 925, 933 (D.D.C. 1978), *aff'd*, 609 F.2d 553 (D.C.Cir.1979) (where environmental organization sought declaratory and injunctive relief against defendant Secretary of Interior in regard to his issuance of preference-right coal leases on federal land, numerous lease applicants who could be adversely affected not indispensable parties).

We find unpersuasive the owner's contention that the absence of other private landlords will subject GRFA to "inconsistent obligations" within the meaning of rule 19(a)(2)(ii). Resolution of the issue in the instant case will result in only one possible obligation: the duty to find the existence of good cause prior to issuing a notice to vacate. *See United Transportation Union*, 634 F.2d at 22; *California Department of Transportation v. City of South Lake Tahoe*, 466 F.Supp. 527, 540–41 (E.D.Cal.1978). Accordingly, we conclude that the district court properly held that the absent landlords are not an indispensable class.

## VI. CONCLUSION

Because we find that the district court properly found (1) that the lease terminations herein constituted state action despite the involvement of a private owner; (2) that Section 8 existing housing tenants had a property interest requiring due process protection in cases of deprivation; and (3) that absent owners were not an indispensable class, we affirm.

AFFIRMED.