James Van Buren FIELDS, Individually and on behalf of All Others Similarly Situated, Plaintiff,

v.

Earnestine PITTMAN, et al., Defendants.

Civ. A. No. C83–437A.

United States District Court, N.D. Georgia, Atlanta Division.

April 22, 1983.

Opinion on Motion for Clarification May 25, 1983.

Opinion on Motion to Suspend Preliminary Injunction Aug. 31, 1983.

David A. Webster, Atlanta, Ga., for plaintiff.

P. Andrew Patterson, Atlanta, Ga., for Pittman, Anton, & Elsea.

Vivian D. Egan, Atlanta, Ga., for Gates & Ermutlu.

## ORDER

SHOOB, District Judge.

Plaintiff and the members of the class he seeks to represent are recipients of benefits under the Georgia and Fulton County Supportive Living Program[1] who have been or will be terminated from the said program without a hearing. Plaintiff seeks a preliminary and a permanent injunction compelling defendants to continue his benefits under the said program and enjoining the termination of those benefits until a hearing can be held on the merits of the termination decision. Additionally, plaintiff seeks a declaratory judgment that the Georgia statute, Official Code Ga. § 37–2–1 *et seq.,* under which the Supportive Living Program was enacted is so vague, imprecise, and arbitrary so as to violate plaintiff's due process rights under the Fourteenth Amendment. Finally, plaintiff seeks a declaration from this Court that defendants have failed to promulgate regulations and rules required by the said state statute.

The case is presently before the Court on plaintiff's motion for a preliminary injunction. Plaintiff, in order to obtain a preliminary injunction, must show the following: (1) the injunction would not be adverse to the public interest; (2) the threatened injury to plaintiff outweighs the damage which the injunction may cause defendant; (3) irreparable injury will be suffered by plaintiff unless the injunction issues; and (4) plaintiff has a substantial likelihood of success on the merits. *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). In order to properly address the above-mentioned criteria, the Court will briefly examine the facts giving rise to this action.

Plaintiff is a twenty-six year old male out-patient at Grady Memorial Hospital in Atlanta, Georgia, who has been a recipient of benefits under the Fulton County Supportive Living Program since October, 1982. These benefits include payment of rental on an apartment and an allotment of $142 per month for food and personal care needs. At the time plaintiff entered the said program he signed an Individual Program Plan, which provides in part that the said

---

1. Pursuant to statutory authority the Georgia Department of Human Resources, through its Division of Mental Health and Mental Retardation, whose director is defendant Ermutlu, grants funds to certain lead county boards of health in each state mental health area for the purpose of providing supportive living services to mentally ill persons within the said area. Official Code of Ga.Ann. at § 37–1–21. The term supportive living services is a catch-all term including apartment living, independent group residences, family support homes, family treatment homes, adaptive group residences, intensive training group homes, residential care homes, and respite care in any of these options. The lead county, Fulton County in this case, prepares a budget for the funds granted to it, to be approved by the Division. The county then expends the funds, consistent with its budget, to provide the services delineated therein to persons of its choosing. *See* Affidavit of Patricia Clifford. With regard to adult persons who may receive supportive living services the Division has created two guidelines: (1) an income limit and clinical criteria for receiving services; and (2) a requirement that residents contribute certain portions of their income to their care. However, since funds for the provision of services are limited, counties are not required to nor are they expected to offer or provide services to all mentally ill persons who meet the income and clinical criteria. *See* Affidavit of P. Clifford.

plan can be terminated by any of the parties to the plan upon thirty days written notice. Exhibit A to Affidavit of James Fields.

Attached to the said plan are the "Rules and Regulations for Adaptive Group and IGR Homes" (Rules and Regulations) as well as the "Exit Criteria." These documents provide as follows:

### Rules and Regulations

1. All residents are expected to be out of bed by 7:00 a.m.

2. Breakfast will be served during the hours of 7:00 a.m.—8:00 a.m.

3. Lunch will be served from 11:30 a.m.—1:30 p.m.

4. Dinner will be served from 6:30 p.m.—8:00 p.m.

5. All residents are responsible for maintaining their personal grooming and hygiene.

6. All residents are responsible for cleaning their own rooms and other household chores.

7. All residents are expected to be in their residence by 12:00 p.m., except on weekends.

8. Visitors are expected to vacate premises by 12:00 p.m.

9. No smoking will be allowed in the bedrooms at any time.

10. Residents are not permitted to enter the living quarters of their House Parent and/or any other resident at any time, except with House Parent's and/or resident's permission.

11. Residents are responsible for respecting each others rights and beliefs.

12. All residents are responsible for keeping all mental health, medical and counseling appointments, including community activities.

13. No telephone calls will be accepted after 12:00 p.m., except for emergencies. Long distance calls, however, must be sanctioned by your House Parent.

### Exit Criteria

1. If at any time Residents are not satisfied with the living conditions or other services that [are] provided by the Supportive Living Services Program (SLSP), They are not under an obligation to continue in the program.

2. If at any time Resident's behavior becomes unmanageable, he/she will be terminated from the Supportive Living Services Program (SLSP).

3. Excessive abuse of house rules and regulations will result in termination from the Supportive Living Program.

4. Any resident whose behavior progresses to the level that such a structured environment is not required, will be assisted in placement in a more appropriate setting.

*Id.*

Plaintiff contends that he lived in Apartment 31 of an individual group residence home located at 493 N. Highland Avenue, N.E., Atlanta, Georgia provided by the said program. *Id.* at ¶ 3. Assertedly, plaintiff shared the said apartment with a roommate named Gregory Johnson. According to plaintiff, he and his roommate sometimes had disagreements, which they worked out between themselves or with their houseparent. On January 21, 1983, according to plaintiff, Gregory Johnson returned to their apartment from a walk. Plaintiff assertedly had a female guest with him at the said time in the apartment and the door was locked. Plaintiff's roommate allegedly did not have his key to the apartment with him and began kicking the door and yelling loudly. Eventually, plaintiff contends, he opened the door and was confronted by his roommate, who had pulled out a knife. According to plaintiff, acting in self defense, he confronted his roommate. *Id.* at ¶ 4.

Subsequently, the houseparent, Mrs. Anne Douglas, called the police. When the police arrived, plaintiff and his roommate had stopped fighting; nevertheless, the police arrested plaintiff and his roommate and both were placed in jail. *Id.* at ¶¶ 6, 7. Plaintiff and his roommate stayed in jail for three days. *Id.* Plaintiff contends that subsequent to the above-mentioned incident he has not been involved in any further

difficulty as a resident in the said program. *Id.* at ¶ 8.

As a result of the foregoing incident, plaintiff received written notice from the Fulton County authorities, on February 1, 1983, that he would be terminated from the said plan, effective March 2, 1983. It is undisputed that plaintiff has not been provided any form of hearing prior to defendants' decision to terminate him from the program, subsequent to the termination decision, or that the plan provides for any such hearing.[2]

█ Plaintiff's complaint asserts three claims: (1) denial of due process by his termination from the said program without a prior hearing; (2) denial of due process by defendants' failure to promulgate adequate standards to guide defendants' decisions as to whether an individual ought to be terminated from the said program; and (3) defendants' failure to promulgate rules and regulations violates Georgia law. Defendants contend that plaintiff cannot demonstrate a substantial likelihood that he will prevail on the merits because he cannot establish that he has a property interest in his benefits under the said program. Accordingly, defendants maintain that plaintiff is not entitled to a preliminary injunction.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim for entitlement to it . . . .

*Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In the recent case of *Jeffries v. Georgia Residential Finance Authority,* 678 F.2d 919, 925, *cert. denied,* —— U.S. ——, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982), the court stated as follows:

A property interest in a benefit may be established through *existing rules or mutually explicit understandings* that support the claim of entitlement to the benefit, or through the construction of statutes and regulations which define and delimit the interest asserted.

(Emphasis added.) Furthermore, "[i]t is well settled that a protected property interest arises where a government benefit may be withdrawn only for cause." *Id., citing, Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978).

In *Jeffries* the court of appeals upheld the finding of this Court that tenants receiving federal housing subsidies under Section 8 of the Existing Housing Assistance Payments Program, 42 U.S.C. § 1437f (1978), have a constitutionally protected property interest in the continued occupancy of their rental units until the end of their lease term. *Id.* at 927. The court of appeals concurred with this Court's finding that despite the thirty-day termination clause in the leases in question, private landlords may terminate tenants' leases mid-term only upon a determination by the Georgia Residential Finance Authority (GRFA) that "good cause" exists. *Id.*

This Court in *Jeffries* found the primary source of plaintiff's property interest in the Section 8 program itself. 503 F.Supp. 610, 617 (1980). The key provisions of the said section are subsections (d)(1)(A) and (B), which state:

(d)(1) Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that—

(A) The selection of tenants for such units shall be the function of the owner, subject to the provisions of the annual

---

**2.** In this instance, it is undisputed that on or about February 17, 1983, a meeting was held between plaintiff, his counsel, and members of the Fulton County Supportive Living Staff to discuss plaintiff's termination from the plan. Complaint at ¶ 30; [Fulton County] Defendant's Brief in Opposition to Motion for Preliminary Injunction at p. 4. Plaintiff asserts that at the said meeting he attempted to explain that he did not start the fight with his roommate on January 21, 1983; however, plaintiff states, he was then told that fighting for any reason, regardless of fault, was justification for termination from the plan. Complaint at ¶¶ 30–31.

contributions contract between the Secretary and the agency;

(B) The agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy.

This Court interpreted the said statute as follows:

Such authority [on the part of the Georgia Residential Finance Authority (GRFA) to terminate the tenancy] would be meaningless were GRFA not to exercise some review. If Congress had not intended that the PHA [Public Housing Authority] actually review the cost for a Section 8 owner's desire to terminate a tenancy, it presumably would not have required a meaningless formality by providing that only the agency shall have the right to give a notice to vacate. Furthermore, the Section 8 owner may only "make representation to the agency for termination of tenancy." The court interprets this language to mean that good cause is required before termination, and the Section 8 owner may only make representation to the agency that good cause for lease termination exists. If termination at will by the owner had been contemplated by the statute, there would have been no need to require the owner to make representation to the agency and to require the agency to bear the burden of issuing notices to vacate. If good cause were not required to terminate the tenancy, the owner would have nothing to make a representation about.

*Id.* 503 F.Supp. at 617. The court of appeals concurred with this Court's finding that "it is reasonable to implicitly require just cause where the agency itself issues the notice." *Jeffries,* 617 F.2d at 926.

■ In this action, defendants contend that plaintiff has no reasonable expectation of continued benefits given the "Individual Program Plan's" provision that either party may terminate the said plan upon thirty days notice. The Court finds this argument unpersuasive. The said provision does not preclude a finding that the plan implicitly requires that plaintiff be terminated only for cause. After all, even if defendants had cause to terminate plaintiff, they would still be required by the express notice provision to give plaintiff thirty days notice. Thus, it is necessary to examine other provisions of the plan to ascertain whether plaintiff has a reasonable expectation of continued benefits under the plan.

The Court concludes that the "Rules and Regulations" together with the "Exit Criteria" give plaintiff a property interest in the benefits in question. The "Rules and Regulations" provide detailed instructions concerning a plan participant's permissible behavior. These rules coupled with the "Exit Criteria", which although not elaborate, do specifically mention a number of actions which may subject a plan participant to termination, create a legitimate expectation on the part of plaintiff that his benefits will be continued so long as he complies with the said rules. A finding that defendants may unilaterally and without cause terminate a participant's benefits would render the said rules and exit criteria meaningless. Similarly, a finding in *Jeffries* that the GRFA could terminate a Section 8 tenant's lease without cause would have rendered its authority to terminate such a lease on the recommendation of a landlord meaningless.[3]

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that procedural due process requires that welfare recipients must be provided with adequate notice and an evidentiary hearing before benefits may be discontinued. 397 U.S. at 260–68, 90 S.Ct. at 1016–20. Later in *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court deter-

---

**3.** This ruling does not imply that a person who is not a participant in the program, although he might satisfy the financial and clinical requirements, has a property interest in such benefits. That question is not before the Court and raises different considerations. On the other hand, once a person has been accepted into the plan, defendants may not disregard their own rules and regulations, which, in this Court's view, mandate that cause be found to terminate a participant in the plan.

mined that courts must utilize a weighing test for finding what process is due when entitlements are affected, balancing the importance of the private interest at stake versus the government's interest in efficient decision making. *Id.* at 334–35, 96 S.Ct. at 902–03. In this action, given that plaintiff's survival is at stake, due process requires, at a minimum, that defendants' decision be reviewed objectively for a factual error at an evidentiary hearing before the benefits are terminated.

In sum, the Court concludes that plaintiff has established a likelihood of success on the merits as well as the other factors necessary to show his entitlement to a preliminary injunction. Therefore, plaintiff's motion for a preliminary injunction is hereby GRANTED.

### On Motion For Clarification

Defendant Ermutlu's, the state defendant, unopposed motion for clarification of this Court's order of April 22, 1983, is hereby GRANTED. The said order does not compel any action on behalf of defendant Ermutlu or the Division of Mental Health and Mental Retardation of the Georgia Department of Human Resources. The said order solely enjoins the county defendants from terminating plaintiff's supportive living benefits without a hearing.

The Clerk is DIRECTED to substitute John G. Gates, Ph.D., as the state defendant in place of Ilhan Ermutlu, who is no longer a state official.

### On Motion to Suspend Preliminary Injunction

This is an action for a preliminary and a permanent injunction compelling the defendants to continue the benefits of the plaintiff (and the class he purports to represent) under the Supportive Living Services Program and enjoining the termination of those benefits until a hearing is held on the merits of the termination decision. On April 22, 1983, the Court granted a preliminary injunction. That decision is now on appeal to the U.S. Court of Appeals for the Eleventh Circuit.

Presently before the Court is a motion by defendants to suspend the preliminary injunction. As grounds for suspending the injunction, the defendants claim that reports have been received concerning violations by the plaintiff of numerous rules and regulations of the program. The defendants appear to propose that those reports constitute sufficient cause for this Court to suspend the hearing requirement it has imposed for termination.

The defendants thus seek either to have the Court conduct the required hearing itself, or even to have the Court without a hearing permit the plaintiff to be dismissed from the program.

The defendants gravely misunderstand the Court's prior order. If they wish to terminate the plaintiff's benefits, they must do so as the Due Process Clause requires: after a proper hearing. Although they are apparently unwilling to do that, it is within their power to conduct a hearing and to terminate participation for cause shown at that hearing. No action by the Court is necessary.

For these reasons, the motion to suspend the preliminary injunction is DENIED.