763 F.2d 62
 10 Soc.Sec.Rep.Ser. 34, Unempl.Ins.Rep. CCH 16,088
Alphena BREAULT, Eleanor Wade, on their own Behalf and on
Behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
Margaret HECKLER, Secretary of Health and Human Services,
Donald T. Regan, Secretary of the Treasury,
Defendants-Appellees.
 Cal. No. 603, Docket 84-6258.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 25, 1985.
Decided May 21, 1985.
 
 Judith I. Solomon, Legal Aid Soc. of Hartford County, Inc., Hartford, Conn., for plaintiffs-appellants.
 Ellen J. Sazzman, U.S. Dept. of Justice, Civ. Div., Washington, D.C. (Alan H. Nevas, U.S. Atty., New Haven, Conn., and Richard K. Willard, Acting Asst. Atty. Gen., Gabriel Depass, Office of Gen. Counsel, Dept. of H.H.S., Kenneth Schmalzbach, Office of Gen. Counsel, Dept. of Treasury, and John Cordes, U.S. Dept. of Justice, Civ. Div., Washington, D.C., of counsel), for defendants-appellees.
 Before VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge.
 
 
 1
 In July 1978 Alphena Breault, an elderly widow, gave a check to a garage, believing there was sufficient money in her account to cover the check. The check bounced. Unbeknownst to Mrs. Breault, the Social Security Administration had required her bank to pay it an amount allegedly equivalent to four social security payments to Mr. Breault made and deposited after his death, and the bank, without notice to Mrs. Breault, had debited her checking and savings accounts in that amount. Mrs. Wade, another elderly widow, had her account debited in the same manner. The issue on this appeal is whether the debiting of the accounts of these elderly widows and others similarly situated should take place without prior notice and an opportunity to contest the recoupment.
 
 
 2
 In an opinion reported in 591 F.Supp. at 308, the United States District Court for the District of Connecticut (Dorsey, J.) found no merit in the widows' contention that the challenged procedure violated Title II of the Social Security Act and also denied them due process. We agree with the district court's interpretation of the statute. We believe, however, that appellants' constitutional argument merits further consideration by the district court.
 
 
 3
 Social Security benefits are payable in one of three ways: (1) by checks payable to the beneficiary and mailed to his home; (2) by checks payable to the beneficiary's bank and sent directly to the bank for credit to the beneficiary's account; or (3) by credit allowances from a Federal Reserve Bank, charged against the United States Treasury's account with that Bank, a procedure commonly known as an electronic funds transfer. Appellants' statutory claim is premised on the contention that any such payments made after a beneficiary's death are "overpayments" within the meaning of 42 U.S.C. Sec. 404, and that appellants therefore were entitled to a hearing on the issue of whether recoupment of the overpayment should be waived. See Califano v. Yamasaki, 442 U.S. 682, 692-95, 99 S.Ct. 2545, 2553-54, 61 L.Ed.2d 176 (1979). The district court correctly rejected this argument. 591 F.Supp. at 315-17. Because the payments in question did not go to the deceased beneficiaries, they must be treated as erroneous payments, not overpayments, and no statutory pre-recoupment hearing was required. Dockstader v. Miller, 719 F.2d 327, 330-31 (10th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984); Powderly v. Schweiker, 704 F.2d 1092, 1095-97 (9th Cir.1983).
 
 
 4
 The validity of appellants' claim of due process violation hinges upon whether the debiting of their accounts is the result of state action so as to fall within the ambit of the Fifth Amendment. Social Security effects recoupment from the depository bank through the Treasury Department, which is authorized to debit a recalcitrant bank's Federal Reserve account if that is necessary to accomplish recovery. The district court adopted the Government's argument that, because the Treasury Department neither debited nor directed the bank to debit appellants' personal accounts, such debiting did not constitute state action. 591 F.Supp. at 317-18. We question whether the cause and effect nature of the Government's conduct can be disposed of so readily.
 
 
 5
 When the Treasury Department insists upon payment by a depository bank, it does so with full awareness of the course of conduct that the bank subsequently will pursue. The Department knows that the bank's directors are held "to the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs." Kavanaugh v. Commonwealth Trust Co., 223 N.Y. 103, 105, 119 N.E. 237 (1918). The Department also knows that the bank's officers must exercise due diligence in the collection of debts owing to the bank. Harris v. Waters, 112 Misc. 638, 642, 183 N.Y.S. 721 (1920); 1 Michie on Banks and Banking, ch. 3, Sec. 61; 5A id., ch. 9, Sec. 1. In short, the Treasury Department knows that, when it demands payment from a bank because of an allegedly unlawful deposit, the bank will be duty bound to debit the amount of the payment against the account involved so as "to protect itself from loss in responding to the Government's collection action." 49 Fed.Reg. 48,920, p 3 (1984).
 
 
 6
 The Supreme Court has made it clear, although usually by way of dictum, that the Government may be held liable for a private decision if "it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 840, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164-65, 98 S.Ct. 1729, 1737-38, 56 L.Ed.2d 185 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144, 171, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970); Reitman v. Mulkey, 387 U.S. 369, 375-76, 87 S.Ct. 1627, 1631-32, 18 L.Ed.2d 830 (1967). Some of our sister Courts of Appeals have had occasion to predicate holdings squarely on the foregoing principles.
 
 
 7
 In the case of Belles v. Schweiker, 720 F.2d 509 (8th Cir.1983), where the Treasury Department also sought recoupment of social security benefits from a bank, the court addressed the issue of standing and, specifically, the requirement that the injury be fairly traceable to the actions of the defendant. The court held there that the bank's action in debiting Belles' account was "simply a response to the actions of the Social Security Administration and the Treasury Department" and that a set-off against Belles' account would be caused "at least indirectly by the actions of the Secretary." Id. at 514.
 
 
 8
 In Franz v. United States, 707 F.2d 582 (D.C.Cir.1983), the father of three children who, with their mother, plaintiff's former wife, were participants in a Witness Protection Program, sued the Government because of his inability to establish contact with the children. The Government contended among other things that the decision to keep the parties apart was the mother's, not the Government's. In rejecting this argument, the court stated that "[i]f state action reliably may be found upon the identification of any one factor, that factor is significant governmental promotion of the specific conduct by the private actor that allegedly has abrogated the plaintiff's rights." Id. at 592 n. 38. The court also recognized the importance of "overt participation by state officials ... in the activities that eventuated in the asserted injury," id. at 594 n. 45, emphasizing that "the state ought not to be permitted to disclaim responsibility for the consequences of conduct with which, in the eyes of the public, it appears to be intertwined," id. 707 F.2d at 593. See also Ruffalo by Ruffalo v. Civiletti, 702 F.2d 710, 716-17 (8th Cir.1983).
 
 
 9
 In Jeffries v. Georgia Residential Finance Authority, 678 F.2d 919 (11th Cir.), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982), the court held that, because of the defendant's power of veto, it was sufficiently involved with tenant eviction procedures by private landlords to make such evictions state action. The court stated:
 
 
 10
 The private citizen's conduct may be attributable to the state where the government affirmatively facilitates, encourages, or authorizes the objectionable practice.
 
 
 11
 Id. 678 F.2d at 923.
 
 
 12
 It is well recognized in the law of torts that the defense of one's property is normal conduct which should be anticipated by the person creating the risk of loss. See Restatement (Second) of Torts Secs. 442A, 443, 445. Where, as here, the Government demands money from a bank in an amount calculated to reflect deposits made in an individual account, knowing full well as it does so that the bank inevitably will debit that account for the amount so taken, it is difficult to justify the "Who, me?" attitude taken by the Government. One need not cite chapter and verse in order to prove that the Government makes mistakes. Indeed, the Government publicly concedes that there have been incidents when its information regarding the death or date of death of a recipient or beneficiary of social security benefits has been incorrect. See 49 Fed.Reg. 48,919 (1984). When such a mistake results in the improper debiting of a depositor's account, the Government ought not be permitted to disclaim responsibility for the consequences of its conduct.
 
 
 13
 Although the Social Security Administration has made no mistake concerning erroneous payments for the benefit of Mr. Breault and Mr. Wade, their widows sought to make their suit a class action on behalf of present and future recipients of Title II Social Security benefits who have received or will receive benefits payable to deceased beneficiaries and who had or will have their bank accounts debited as a result of the defendants' action to recoup such benefits. Plaintiffs asserted the right to receive notice of the recoupment decision and an opportunity to contest the decision. However, the district court held that the debiting of plaintiffs' accounts did not involve state action and therefore did not reach the question of class certification. 591 F.Supp. at 313 n. 17.
 
 
 14
 Because class certification is committed in the first instance to the discretion of the district court, Califano v. Yamasaki, supra, 442 U.S. at 703, 99 S.Ct. at 2558, we are going to remand this matter to the district court in order that it may rule on plaintiffs' request. Should the district court certify a class whose members can assert a right to dispute the propriety or accuracy of the Social Security Administration's recoupment demands, the district court then should decide whether some form of notice of the proposed recoupment must be given and whether notice by the bank such as is provided for in the newly enacted regulations covering direct credit deposits, 49 Fed.Reg. 48,918, 48,920 (1984) (to be codified at 31 C.F.R. Sec. 210.11), would suffice. The district court need make no provision for an oral hearing. Because any mistakes in Social Security's recoupment demands probably can be corrected by means of written submissions, there is no need for hearings to be held. See Califano v. Yamasaki, supra, 442 U.S. at 695-96, 99 S.Ct. at 2554-55.
 
 
 15
 That part of the district court's judgment which rejected appellants' claim of statutory violation is affirmed. That part which rejected appellants' claim of due process violation is vacated, and the matter is remanded to the district court for further proceedings consistent with this opinion.